## In re Lewis L. PIGG and Jessica Pigg.

### No. 99–14065.

United States Bankruptcy Court, N.D. Mississippi.

April 1, 2005.

---

Tracy Buster Walsh, Goeldner and Walsh, Southaven, MS, for Debtors.

Alex B. Gates, Sumner, MS, Chapter 7 Trustee.

---

*OPINION*

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is the Trustee's Final Report of Administration of Estate, Report of Receipts and Disbursements, Application for Compensation and Reimbursement of Expenses, and Notice of Proposed Distribution, filed by the Chapter 7 trustee, Alex B. Gates; an objection thereto having been filed by the debtors, Lewis L. Pigg and Jessica Pigg; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core contested proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (B), and (O).

II.

The Trustee's Final Report of Administration of Estate, etc., (hereinafter "final report"), was reviewed by the Office of the United States Trustee without objection. The debtors filed their objection pro se. One of the attorneys, who had represented the debtors throughout the course of administration of their bankruptcy case, appeared at the hearing and advised the court that she had no objection to the final report. She expressly did not join in the objection lodged by the debtors.

Jessica Pigg appeared at the hearing and offered comments in support of the objection. Her comments were not actually directed at the trustee's final report, but rather were focused on events surrounding the sale of a parcel of real property in the State of Tennessee and the subsequent acquisition of a parcel of property situated at 950 Star Landing Road in Nesbit, DeSoto County, Mississippi (hereinafter "Mississippi property"). The court will briefly discuss these transactions, which occurred in early 1999, hereinbelow.

Mrs. Pigg additionally voiced the opinion that she and her husband should never have filed a Chapter 7 bankruptcy case, which was allegedly based on the advice of their attorneys. This was the first occasion that this argument had been presented to the court. No pleading has ever been filed by Mr. or Mrs. Pigg (hereinafter referred to as "debtors") to dismiss the case which was commenced over five years ago on September 15, 1999. For reference purposes, the deadline for filing proofs of

claim for non-governmental entities was August 29, 2000, and the debtors discharge order was dated January 11, 2000.

## III.

In an effort to better comprehend the debtors' objection, the court reviewed the bankruptcy file which revealed the following:

A. The debtors' statement of financial affairs reflects that as of the date of the filing of the bankruptcy petition a cause of action had been initiated on July 19, 1999, by Nationwide Mortgage, LLC, (Nationwide) against the debtors in Case No. 99–C–194, Chancery Court of Sumner County, Tennessee. Schedule F reflects a contingent, unliquidated, and disputed claim related to the Nationwide lawsuit in the amount of $103,733.06.

After the bankruptcy case was commenced, a non-dischargeability cause of action was initiated by Nationwide pursuant to 11 U.S.C. § 523(a)(2)(A) and (B), as well as, § 523(a)(6). According to the complaint, the following events occurred: The debtors applied to Nationwide for short-term financing in order to close the sale of their property in Tennessee and to purchase the property, described hereinabove, in Mississippi. The debtors signed a promissory note which was to be secured by a lien on the Mississippi property. At the time that Nationwide extended funds in the sum of $25,933.24 to the debtors, they, in turn, issued a post-dated check to Nationwide in the sum of $21,933.24. When demand was made upon the debtors to execute the deed of trust, which would encumber their Mississippi property, they refused to do so. Nationwide thereafter attempted to negotiate the post-dated check, but it was returned due to insufficient funds.

The debtors denied the allegations of wrongdoing and shortly before the proceeding was to be tried, the parties entered into a judgment of compromise and settlement, dated October 13, 2000. Essentially, the debtors agreed to pay Nationwide and its principal, Billy Suddarth, the sum of $12,000.00 in full and final settlement of the claim against them. The terms of the settlement, however, did not limit Nationwide or Suddarth from receiving the full amount of the claim, which totaled $25,933.24, should assets be available for distribution from the debtors' bankruptcy estate.

B. The statement of financial affairs also reflects that a second lawsuit was pending against the debtors when they filed their bankruptcy case. It was styled *Title Connection, Inc. v. Lewis Pigg and Jessica Pigg*, Case No. 99–8–1068, Chancery Court of DeSoto County, Mississippi. This was listed in the debtors' Schedule F as a contingent, unliquidated, and disputed indebtedness owed to Title Connection for breach of contract in the sum of $200,000.00. Title Connection was the settlement agent on the real estate closing involving the aforementioned Mississippi property which was acquired by the debtors from Richard C. Cox and Lana B. Cox. According to the complaint, Lewis Pigg wrote a personal check to Title Connection for the net proceeds needed to close the purchase. This check, in the sum of $9,933.24, was allegedly returned first for insufficient funds. It was thereafter subject to a stop payment order executed by Mr. Pigg.

After the bankruptcy case was commenced, an agreed order was entered on March 13, 2000, to the effect that the debtors would reaffirm the debt in the sum of $9,933.34. Apparently this was done to delay or avoid a Rule 2004 examination requested by Title Connection. The reaffirmation agreement was never filed with or approved by the court.

C. More significant, however, were the events surrounding the post-petition filing of a deed of trust in the sum of $255,000.00, which was to encumber the Mississippi property after it was acquired from Mr. and Mrs. Cox. At a hearing in this court, concerning the requested distribution of the debtors' homestead exemption, the following documents were received in evidence:

Exhibit 1–A Contract for the Sale and Purchase of Real Estate, which provided for a total purchase price of $260,000.00, consisting of an earnest money deposit of $1,000.00, and a balance of $259,000.00 to be paid at closing.

Exhibit 2–A U.S. Department of Housing and Urban Development Settlement Statement executed by Lewis Pigg. This document reflects an elevated contract sales price of $300,000.00 and indicates that $9,933.24 was due from the borrower. Mary Frances Rudy was shown as the closing attorney, and Title Connection was reflected as the settlement agent. (In a separate pleading located in the court file, Mary Frances Rudy filed a motion, sponsored by local counsel, to be admitted pro hac vice in order to participate in this case. A Certificate of Good Standing, dated May 10, 2000, from the U.S. District Court for the Middle District of Tennessee was appended to the motion attesting that Rudy had been admitted to practice on February 21, 1989.)

Exhibit 3–A Borrower's Affidavit and Agreement, executed by Lewis Pigg, reflecting the sales price for the property as $300,000.00.

Exhibits 4 through 8–These are documents dealing with the Nationwide Mortgage cause of action discussed hereinabove.

Exhibits 9–This is a series of checks representing the monthly mortgage installments paid by the debtors to Home-Comings Financial Network and its predecessor in interest, Sebring Capital Corporation. The debtors stopped payment on the check to HomeComings, dated August 31, 1999.

Exhibit 10–This is a check issued by Nationwide Mortgage to Lana Cox in the sum of $20,000.00, dated February 25, 1999, the date of the Mississippi property loan closing.

Exhibit 11–This is a modified first page of the Contract for the Sale and Purchase of Real Estate that the debtors entered into with Mr. and Mrs. Cox. This document reflects an elevated purchase price of $300,000.00 and sets forth that $45,000.00 was deposited with Mr. and Mrs. Cox as a down payment. The balance of $255,000.00 was to be paid at closing. Since there were no signature pages appended to this exhibit, the court cannot conclude that it was ever executed by anyone.

Exhibit 12–This is a Loan Closing Instructions document which reflects that Sebring Capital Corporation was the initial lender to the debtor, Lewis Pigg, in the sum of $255,000.00. It reflects the sales price as $300,000.00, and indicates that monthly installments in the sum of $2,500.96 were to commence on April 1, 1999.

Exhibit 13–This is a copy of the check issued by the debtors, payable to Title Connection in the sum of $9,933.24, which was initially returned for insufficient funds.

As noted hereinabove, the initial lender to the debtors for the purpose of paying the balance of the purchase price for the Mississippi property was Sebring Capital Corporation (Sebring). At some point in time, Sebring assigned its interest in this loan to HomeComings Financial Network (HomeComings).

For reasons unknown to the court, the original warranty deed executed by Mr. and Mrs. Cox to the debtors and the related deed of trust to Sebring were not recorded at the Office of the Chancery Clerk of DeSoto County, Mississippi. A replacement warranty deed, dated February 23, 1999, but notarized on July 16, 1999, was ultimately recorded on July 23, 1999, in Book 356 at page 128. Another warranty deed was recorded on August 10, 1999. However, the deed of trust, executed in favor of Sebring, was not recorded until December 10, 1999, subsequent to the time that the debtors filed their bankruptcy case.

HomeComings filed two proofs of claim in this case—the first as a secured creditor holding a claim of $254,557.26, and the second as an unsecured creditor holding a claim of $254,557.26. The trustee timely filed an objection to these claims. On September 5, 2001, an agreed order was entered allowing only the unsecured claim because HomeComings recognized that its deed of trust had been recorded post-petition and was thus avoidable by the trustee. This order has now become final and non-appealable.

On December 18, 2003, a notice of transfer of claim was docketed, reflecting that HomeComings had transferred its claim to Stewart Title Guaranty Co., (Stewart Title), as of November 10, 2003. The claim is set forth as an unsecured claim on a promissory note in the sum of $254,557.26. Rather than deal with the untimely filed deed of trust, HomeComings elected to make demand upon Stewart Title, which had provided title insurance at the loan closing. Stewart Title honored the demand and paid HomeComings because its lien had not been timely recorded. Stewart Title now holds the claim of Home-Comings insofar as receiving distributions that might ultimately be made from this bankruptcy estate.

Had the bankruptcy case not been filed, the security interest that had been created at the loan closing would have been valid insofar as the debtors and the lender were concerned. The security interest would have been ultimately perfected by the recording of the deed of trust on December 10, 1999. However, when the bankruptcy case was filed on September 15, 1999, the Chapter 7 trustee, pursuant to § 544(a) of the Bankruptcy Code, took priority over all unperfected security interests in the debtors' real property for the benefit of all of the creditors of the debtors' bankruptcy estate.

Recognizing that the lien of the deed of trust was not timely perfected, the trustee initially filed a motion to sell the Mississippi property on February 28, 2000. He had previously employed Landis O. Foy, Jr., and Crye–Leike Realtors to assist him in marketing the property for a real estate commission of six percent. The motion to sell was set for hearing on April 10, 2000. It drew objections only from Nationwide and Title Connection. These objections were amicably resolved. The trustee, however, realized that his motion did not request that the sale be "free and clear of liens." As such, a second motion was filed on April 15, 2000, setting forth this language. It was immediately noticed for a hearing date of May 12, 2000. Since no additional objections were filed, an order was entered authorizing the sale on May 17, 2000, for a price of $202,000.00. In connection therewith, a real estate commission was approved for Foy and Crye–Leike Realtors in the sum of $12,120.00. The order has now become final and non-appealable. The trustee will distribute the remaining balance of these proceeds when his final report is approved.

On January 18, 2000, the attorneys representing the debtors filed a motion to release from the funds that the trustee had on hand the sum of $75,000.00, which represented their homestead exemption. This motion was resisted by both Nationwide and Title Connection. Title Connection had not filed a non-dischargeability complaint and the deadline for filing had run. After conducting a hearing and receiving into evidence the exhibits noted hereinabove, the court determined that the debtors were indeed entitled to receive their homestead exemption and directed the trustee to release $75,000.00 to them. Since the debtors' property was not encumbered by a valid pre-petition deed of trust, the court concluded that the debtors should be able to claim their homestead exemption from the proceeds realized from the trustee's sale of the property ahead of general unsecured creditors. This decision was not appealed and now has become final.

### IV.

At the hearing on the trustee's final report, Mrs. Pigg commented at length that the transaction involving the purchase of the Mississippi property from Mr. and Mrs. Cox was riddled with fraud. However, no motion or complaint has ever been filed to appropriately bring these allegations before the court. Mrs. Pigg asserted that her attorneys should never have counseled her to file a Chapter 7 bankruptcy case. Again, no motion or complaint has ever been filed to address this issue. As noted hereinabove, had the bankruptcy case not been filed, and since no complaint challenging the legality of the purchase transaction had been initiated, the deed of trust originally executed to secure the balance of the purchase price for the Mississippi property would have been recorded perfecting a binding lien against the property. The disputes concerning the $9,933.24 check issued to Title Connection, which was returned for insufficient funds, and the claims of Nationwide would likely have been litigated elsewhere in a court of competent jurisdiction. They would not have just evaporated.

The matters that Mrs. Pigg discussed should have been raised some time ago to appropriately test their merit. The debtors' objection has little to do with the trustee's final report. Consequently, the objection is not well taken and it will be overruled by a separate order consistent with the analysis set forth herein.

The trustee's final report will be approved as presented utilizing the court's standard form order.